UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARILYN PITRE,**
o/b/o S.R.P.,

    Plaintiff,

vs.                                                           Case No. 8:09-CV-0469-T-EAJ

**MICHAEL J. ASTRUE**
**Commissioner of**
**Social Security,**

    Defendant.
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying a claim for Supplemental Security Income ("SSI") on her child's behalf under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence

---

[1] The parties in this case have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 17)

as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

In a child's SSI case, there is a three-step sequential process for determining whether the child is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is determining whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, then the second step is to determine whether the child's impairment is "severe." 20 C.F.R. § 416.924(c). This step requires analysis of whether the impairment is more than just "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If it does not cause more than minimal functional limitations, then the impairment is not "severe" and the child is not disabled. Id. Finally, the third step requires analysis of whether the impairment meets, medically equals, or functionally equals in severity a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d).

If the child's impairment or combination of impairments does not meet or medically equal any listed impairment, the examiner determines whether the impairment functionally equals a listing

by evaluating the child's six domains of functioning. The six domains of functioning are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1). If the child has extreme limitations in one of the broad areas of development or functioning, or marked limitations in two of such areas of development or functioning, a finding of functional equivalence will be made. 20 C.F.R. § 416.926a(a). Thus, if the child is not engaged in substantial gainful activity, and has a severe impairment, and the child's impairment meets or functionally equals a listing, then the child will be considered disabled and entitled to SSI benefits. 20 C.F.R. § 416.924(b)-(d).

## I.

Plaintiff filed her application for SSI benefits on behalf of Claimant, a child under the age of 18, on November 18, 2005, alleging a disability onset date of May 16, 1995. (T 47) Plaintiff alleges that Claimant is disabled due to learning disabilities and hyperactivity related to Attention Deficient Hyperactivity Disorder ("ADHD"). (T 116) Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision dated June 26, 2008. (T 13-18) Claimant was thirteen years old at the time of the decision. (T 16) On December 1, 2008, the Appeals Council denied the Plaintiff's request for review. (T 5) Plaintiff then filed this action seeking judicial review of the Commissioner's final decision. (Dkt. 1)

Following the administrative hearing, the ALJ found that Claimant did not have a severe impairment that caused more than a minimal functional limitation and, therefore, Claimant was not disabled. (T 16) Specifically, in determining that Claimant did not have a medically determinable or severe impairment or combination of impairments, the ALJ considered Claimant's medical

3

records, school records, and the hearing testimony of Claimant and Plaintiff. The ALJ held that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, the Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. The ALJ found that Claimant's impairments caused no more than minimal functional limitations.

The medical evidence has been discussed in the ALJ's opinion and will not be repeated here except where as necessary to address the issues presented.

## II

**A.** Plaintiff contends that the ALJ erred in finding that Claimant had no severe medically determinable impairments and has only minimal functional limitations.

Plaintiff first alleges that the ALJ ignored the consultative evaluation of Lawrence N. Pasman, Ph.D. ("Dr. Pasman"), Claimant's school records, and Plaintiff's testimony regarding Claimant's severe limitations in academic achievement due to ADHD. In particular, Plaintiff contends that the ALJ improperly discounted the results of the tests administered by Dr. Pasman. Second, Plaintiff asserts that the ALJ incorrectly relied on Claimant's testimony that he was doing better in school. Plaintiff argues that Claimant's school records and Plaintiff's testimony establish that Claimant was falling further behind in school. Third, Plaintiff alleges that Claimant's limitations in the areas of acquiring and using information were extreme because he functioned at three standard deviations from the norm, he was retained two grades, and he was in the sixth grade at the age of thirteen. Finally, Plaintiff alleges that the ALJ should have more fully developed the record with regard to Claimant's three standard deviations from the norm or called a medical expert to interpret Claimant's achievement testing.

4

1. <u>Medical Evidence</u>

Claimant was treated at All Kids Clinic from September 2002 to October 2005. (T 155-66) On September 29, 2005, Claimant's physician found that Claimant's physical, social, emotional, and mental health development were appropriate for his age. (T 156) The physician determined that Claimant was not delayed in any area of development. (<u>Id.</u>) In October 2005, Claimant was referred to a speech therapist and a neurologist based on Plaintiff's report that Claimant was not reading or writing. (T 155) However, there is no indication that Claimant received any speech therapy or treatment from any specialists. (T 155-66) Claimant's treating physician did not prescribe any medications to treat Claimant's alleged learning disabilities and behavioral problems. (<u>Id.</u>)

On February 10, 2006, Dr. Pasman, a consulting psychologist, conducted a mental status examination and administered standardized tests to measure Claimant's intelligence and academic achievement. (T 147-54) Claimant's appearance was appropriate and well-groomed; Claimant's speech was logical and coherent and his associations were intact. (T 149) Claimant's memory and concentration were within normal limits. (<u>Id.</u>) Additionally, Dr. Pasman concluded that Claimant had no significant cognitive problems, no motor behavior problems, no evidence of hyperactivity, and no conceptual disorganization. (<u>Id.</u>)

Plaintiff reported to Dr. Pasman that Claimant's major behavioral problem was "acting-out," disrespecting his teacher, and acting "hyper." (T 154) Plaintiff stated that Claimant was ten years old and in the third grade. (T 148) Claimant had been retained two years and should have been in the fifth grade. (<u>Id.</u>) Although Dr. Pasman believed Claimant's reported behavior problems could suggest a difficulty with impulse control and deficits in judgment, Claimant exhibited no such behavior during the course of two hours of testing. (<u>Id.</u>) Indeed, Claimant's behavior was attentive,

5

calm, and highly appropriate. (T 154) Further, Claimant exhibited no difficulty establishing emotional rapport and Claimant's mood was upbeat and happy. (T 149)

The results of the Wechsler Intelligence Scale for Children indicated that Claimant's general cognitive ability was in the low average range, his verbal reasoning abilities were borderline, his nonverbal reasoning abilities were average, and his abilities to sustain attention, concentrate, and exert mental control were in the average range. (T 150-51) In fact, Claimant performed better than approximately 55% of children his age in the areas of sustaining attention, concentration, and mental control. (T 151) Claimant's ability in processing simple visual material was average. (Id.) Claimant had a full scale IQ of 85. (T 149)

In reference to Claimant's scores on the Woodcock-Johnson Tests of Achievement, Claimant's broad mathematical reasoning and problem solving score was in the low average range. (T 152) Claimant's mathematical calculation skills, written expression abilities, and academic knowledge were in the low to low average range, while Claimant's broad reading abilities were in the very low range. (T 152-53) Dr. Pasman noted that "[a]lthough there was a report of attentional deficits, hyperactivity and disruptive behavior at home and in the school setting, there was no profound symptomatology present during the course of this prolonged evaluation." (T 154) Dr. Pasman concluded that Claimant's overall cognitive ability was in the low average range but there appeared to be considerable deficits in broad reading. (Id.) Furthermore, Dr. Pasman indicated that Claimant's frustration related to his deficits in reading may contribute to Claimant's acting-out behaviors at school. (Id.) Dr. Pasman diagnosed Plaintiff with a reading disorder noting that Claimant's "performance was just at the threshhold of a reading disorder factoring in his age." (Id.)

On February 14, 2006, James B. LeVasseur, Ph.D. ("Dr. LeVasseur"), a non-examining psychologist, concluded that Claimant had a severe reading disorder but this impairment or combination of impairments did not meet, medically equal, or functionally equal the Listings. (T 141) In the area of acquiring and using information, Dr. LeVasseur concluded that Claimant had less than marked limitations based on Claimant's IQ tests scores and problems with math and reading. (T 143) Dr. LeVasseur determined that Claimant had less than marked limitations in attending and completing tasks and that Claimant did not demonstrate hyperactivity, restlessness, or distractibility. (Id.) And while Claimant was occasionally distracted and required some redirection, Claimant was able to complete tasks independently once redirected. (Id.) Dr. LeVasseur noted that Claimant "likes to seek attention sometimes inappropriately" but Claimant had no serious behavioral problems based on medical evaluations and pediatrician records. (Id.)

In May 2006, Timothy Foster, Ph. D., ("Dr. Foster"), a non-examining psychologist, opined that Claimant had an unspecified learning disorder and conduct disorder but his severe impairments or combination of impairments did not meet, medically equal, or functionally equal the Listings. (T 134) Dr. Foster concluded that Claimant had less than marked limitations in acquiring and using information, no limitations in attending and completing tasks, and marked limitations in interacting and relating to others. (T 136)

2. School Records

In January 2006, Claimant's teacher Dianne Lichter ("Ms. Lichter") completed a teacher questionnaire on Claimant's overall functioning. (T 107-114) Claimant had no problems in comprehending oral instructions, understanding vocabulary, understanding and participating in class discussions, providing organized oral explanations, expressing ideas in written form, and applying

7

problem solving skills. According to Ms. Lichter, Claimant had difficulty in reading and comprehending written materials and math problems. (Id.) Claimant had problems paying attention and working without distracting himself or others; however, once Claimant was redirected to focus on the task, he was able to finish his assignments correctly. (T 107-08) Furthermore, Claimant had difficulty expressing his anger appropriately and following classroom rules. (T 110)

On May 16, 2006, Ms. Lichter expressed her concern that Claimant's behavior had deteriorated over the past month. (T 104) Ms. Lichter thought his behavior problems could be due to troubles at home. (Id.) Claimant is one of six children. (T 103) Ms. Lichter tried to communicate with Plaintiff about Claimant's behavior but was unable to reach her. (T 104) Subsequently, Claimant's mother confirmed that she was having troubles with Claimant at home. (T103-04) Overall, Ms. Lichter believed that Claimant was a "really good kid" and had taken on some leadership responsibilities during the year. (Id.) Ms. Lichter stated that Claimant was "a smart boy and can reason" but with his recent behavior "it was almost like it was not the same kid anymore." (Id.) Claimant was not on any medications. (Id.)

In March 2007, Claimant's Individual Educational Plans ("IEP") described Claimant as "a very charismatic young man who is very willing to help his teachers and peers. He is constantly volunteering to help in and around school. He was appointed to a position on the patrol team because of his consistent dedication to helping...." (T 62) Claimant's episodes of uncontrolled temper were less common. (Id.) As to Claimant's academic achievements as a fourth grader, Claimant was receiving intensive reading instructions in the Exceptional Student Education ("ESE") program because his reading scores were below a third grade level. Although Claimant had increased his writing scores, his math assessments were at a late second/early third grade level. (Id.)

8

In the areas of Claimant's social and emotional functioning, independent functioning, communications, and healthcare needs, there were no concerns. (Id.) To improve his academic achievements, Claimant received accommodations for instructional delivery and daily intensive assistance from the ESE program and his general education teachers. (T 65-66)

Pursuant to the recommendations in Claimant's 2008 IEP, Claimant received daily specially designed instruction from the ESE program in reading, writing, and math. (T 54-55) Claimant's accommodations included more instructional time, shortened assignments, and reductions in workload. (T 58) In addition, Claimant received special education services outside the regular classroom 21% to 60% of the time. (Id.)

3. Hearing Testimony

At the May 22, 2008 hearing, Claimant was thirteen and in the sixth grade. (T 170) Claimant stated that he was getting good grades in school and paying attention in class. (T 170-71) Claimant made an A in language arts, a B in science, a C in geography, and a F in math. (T 170) Claimant explained that he was able to finish his class work in every class, except for math. (T 172) In reference to Claimant's socialization, Claimant testified that he gets along with his friends at school, had prior girlfriends, and currently has a girlfriend. (T 173-75) Claimant participates in sports, playing on the basketball team and playing quarterback on the football team. (T 175-76) At home, Claimant helps with chores and is able to brush his teeth, shower himself, and dress himself. (T 173-75) Claimant was not taking any medications and was not seeing a physician for any medical issues. (T 176)

Plaintiff testified that Claimant was trying to behave and was more concerned about his hygiene because of his girlfriend. (T 177) Further, Plaintiff was not receiving calls every week

9

from the school about Claimant's behavior. (T 178)  Because Claimant's teacher permits him to stand up in class and to take periodic breaks, Claimant was behaving in school. (Id.)  Claimant was also receiving tutoring help from his teacher.  (T 182)  However, Claimant was failing math and would have to attend summer school.  (Id.)  In addition, Plaintiff stated that Claimant was promoted from fourth grade to sixth grade because the school did not want him graduating high school at age twenty-one.  (T 182)  Plaintiff agreed that Claimant was not mentally retarded but a slow learner who has difficulty reading.  (T 181-82)  Plaintiff believed Claimant has ADD because Claimant is very hyperactive and Plaintiff's other son was diagnosed with ADD.  (T 182-83)  Claimant's pediatrician did not diagnose Claimant with ADHD and did not prescribe any medications for Claimant.  (T 181-82)  Plaintiff talked to Claimant's pediatrician about Claimant's school behavior and suspensions.  (T 181) According to Plaintiff, Claimant's pediatrician refused to send Claimant to a neurologist.  (T 181, 184)

Upon review of the record, substantial evidence supports the ALJ's determination that Claimant does not suffer from a severe impairment that caused more than minimal functional limitations. Plaintiff has failed to establish that Claimant was disabled due to behavior problems and learning disorders related to ADHD.  Claimant's medical records do not establish a diagnosis or symptoms of ADHD or behavioral problems. At most, the medical records from Claimant's pediatrician reveal that Claimant was referred to a speech therapist and neurologist to address problems with Claimant's ability to read and write.  Nonetheless, Plaintiff never followed up on these referrals.  In reference to Dr. Pasman's mental evaluation, Claimant demonstrated normal concentration and motor behavior with no evidence of hyperactivity during the lengthy interview and testing. Dr. Pasman did not diagnose Claimant with ADHD or detect  any symptoms of

10

hyperactivity or behavioral problems. Claimant had an IQ score of 85, which was in the low average range of intellectual functioning. Consistent with Dr. Pasman's opinion, Drs. LeVasseur and Foster did not diagnosis Claimant with ADHD. These consulting physicians found that Claimant had less than marked limitations in acquiring and using information, and no limitations or less than marked limitations in attending and completing tasks.

Contrary to Plaintiff's argument, the ALJ did not improperly discount Claimant's low testing scores. The ALJ acknowledged the results of the tests administered by Dr. Pasman but noted that the testing was administered before Claimant obtained academic assistance. (T 17) The ALJ concluded that Claimant's testimony regarding his school performance indicated that Claimant "has begun to overcome any perceived deficiency." (T 18) The results of Claimant's achievement tests administered in February 2006 establish that Claimant's math, writing, and academic knowledge abilities ranged from low to low average. Claimant's broad reading abilities were rated very low. In 2006, Dr. Pasman concluded that Claimant was only at the threshhold of a reading disorder. Dr. Pasman found no evidence of mental retardation or borderline intellectual functioning. To improve his academic achievements and increase his ability to read at grade level, Claimant received daily intensive assistance from the ESE program and his general education teachers. In 2007, Claimant had improved his writing abilities and his teachers had no concerns about his social and emotional functioning, his independent functioning, or communications skills. Indeed, during 2007, Claimant assumed a leadership position at school and his behavior improved. During 2008, Claimant continued to receive daily specially designed instruction from the ESE program and other accommodations. At the May 2008 hearing, Claimant stated that he was getting good grades and paying attention in class. Although Claimant was failing math, he received an A in language arts

11

and was passing most of his classes. Thus, Claimant's testimony and school records support the ALJ's finding that Claimant's academic performance and behavior improved after he received academic assistance.

Plaintiff's testimony does not establish that Claimant was falling behind in school. Rather, Plaintiff stated that she was not receiving calls every week from the school about Claimant's behavior. According to Plaintiff, the new accommodations implemented by his teacher were effective and Claimant was behaving. And while Claimant was failing math, he was scheduled to attend summer school for additional instruction.

There is no merit to Plaintiff's position that Claimant's limitations in the areas of acquiring and using information were extreme because he functioned at three standard deviations from the norm, he was retained two grades, and he was in the sixth grade at the age of thirteen. Claimant's teacher indicated that Claimant had no problems in comprehending oral instructions, understanding vocabulary, understanding class discussions, expressing his ideas in written form, or applying problem solving skills. Dr. Pasman concluded that Claimant was at the threshhold of a reading disorder. However, the intensive daily instruction Claimant received in 2007 and 2008 resulted in improvements in his reading and writing abilities. Both consulting psychologists agreed that Claimant had less than marked limitations in acquiring and using information. Dr. LeVasseur acknowledged Claimant's problems in reading and math but concluded that Claimant's other testing scores did not indicate any serious problems with acquiring and using information. (T 143) Dr. Foster considered the fact that Claimant had been retained two grades and opined that Claimant had less than marked limitations in acquiring and using information. (T 136)

Plaintiff also contends that the ALJ should have developed the record with regard to Claimant's three standard deviations from the norm or called a medical expert to interpret Claimant's achievement testing. An ALJ has an affirmative duty to develop a full and fair record. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). This obligation, however, does not relieve the claimant of the burden of proving he is disabled. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Further, an ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) (citation omitted).

Here, the ALJ had sufficient evidence before him to make an informed decision as to the existence of Claimant's alleged impairments and, as such, that it was not necessary to obtain a consultative mental status examination. As previously discussed, Dr. Pasman and the consulting psychologists were in agreement that Claimant had less than marked limitations in functional limitations. The ALJ also considered Claimant's medical records, Claimant's school records, and the hearing testimony in concluding that Claimant did not have a severe impairment that caused more than minimal functional limitations. Thus, the ALJ substantially fulfilled his requirement to develop the record and he had no duty to call a medical expert to interpret Claimant's achievement scores.

**B.** Plaintiff argues that the ALJ erred in giving little weight to Plaintiff's testimony regarding Claimant's behavior problems and academic performance.

In his decision, the ALJ noted that Plaintiff's testimony "primarily focused on her lay opinion that the claimant was hyperactive and very slow." (T 18) The ALJ held that Plaintiff's testimony was inconsistent with the allegations of disability because Plaintiff testified that Claimant

13

had been behaving better and was more interested in school. (Id.) The ALJ gave little weight to Plaintiff's testimony because there was no evidence to support a finding that Claimant had a medically determinable severe impairment. (Id.)

The credibility of witnesses is for the Commissioner to determine, not the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). Moreover, it is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). Where an ALJ decides not to credit a witness' testimony about a claimant's pain or complaints, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. See Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curium).

Specifically, Plaintiff argues that the ALJ ignored Plaintiff's testimony that: (1) Claimant was in the sixth grade and had jumped two grades because the school did not want him to graduate from high school at age twenty-one, (2) Claimant was suspended from school every other week, (3) Plaintiff received calls from the school about Claimant's behavior every week, (4) Claimant would have to attend summer school because he was failing more than one class, and (5) Plaintiff had tried to get Claimant's pediatrician to prescribe medications to treat Claimant's ADHD.

Here, the ALJ cited a number of reasons, all supported by the evidence, for discounting Plaintiff's testimony. First, the ALJ properly rejected Plaintiff's opinion that Claimant had ADD because Claimant was hyperactive and her other son had been diagnosed with ADD. As discussed, there was no medical evidence or educational records to support Plaintiff's allegation that Claimant suffered from learning disabilities or behavior problems resulting from ADHD. Second, the ALJ correctly held that Plaintiff made inconsistent statements regarding Claimant's limitations. While

Plaintiff claimed that Claimant was suspended from school every other week and she received calls every week regarding Claimant's behavior, Plaintiff testified that Claimant's teacher "is not calling me every week like he used to." (T 177) Indeed, Plaintiff testified that the new accommodations Claimant's teacher had implemented were working and Claimant was behaving. And while Claimant had to attend summer school, the record shows that Claimant was passing most of his classes and had improved his reading and writing abilities. Furthermore, Plaintiff testified that Claimant's pediatrician refused to refer Claimant to a neurologist. Nevertheless, the record reveals that Claimant's pediatrician referred Claimant to a neurologist and speech therapist but Plaintiff failed to follow up on these referrals. Nor is there any evidence in the record that she asked Claimant's pediatrician to prescribe medications to treat Claimant's alleged ADHD. Third, Plaintiff's testimony regarding Claimant's limitations were inconsistent with Claimant's statements about his improved performance in school. In sum, the ALJ provided adequate reasons for discrediting Plaintiff's testimony and those determinations are supported by substantial evidence.

## CONCLUSION

The ALJ did not err in finding that Claimant is not disabled under the Act.

Accordingly and upon consideration, it is **ORDERED** that:

(1)  the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)  the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383 (c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 14th day of May, 2010.

ELIZABETH A JENKINS
United States Magistrate Judge